In re Interest of Rebekah T. et al.,
children under 18 years of age.
State of Nebraska, appellee, v.
Tim T. and Rhonda T., appellants.
654 N.W.2d 744

Filed December 17, 2002.   Nos. A-01-1328 through A-01-1332.

Jerald L. Ostdiek, of Douglas, Kelly, Meade, Ostdiek, Bartels & Neilan, P.C., for appellants.

Douglas L. Warner, Scotts Bluff County Attorney, for appellee.

HANNON and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Tim T. and Rhonda T. appeal from an order of the county court for Scotts Bluff County, Nebraska, sitting as a juvenile court, that adjudicated five of their eight children to be juveniles as defined in Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002) in that Tim and Rhonda failed to provide the proper or necessary education for those five children due to noncompliance with Neb. Rev. Stat. § 79-1601(2) through (5) (Cum. Supp. 2002). For the reasons set forth herein, we affirm.

## BACKGROUND

On August 10, 2001, the Scotts Bluff County Attorney's office filed a petition on behalf of each of Tim and Rhonda's five oldest children and alleged that Tim and Rhonda had neglected or refused to provide those children the proper or necessary education because the children were not regularly attending any public, private, denominational, or parochial school or any type of educational setting that met the requirements of § 79-1601(2) through (5). At the time the petitions were filed, Tim, Rhonda, and their children resided in Gering, Nebraska. However, approximately 2 months before the adjudication hearing, Tim, Rhonda, and their children, except the

oldest child, moved to LaGrange, Wyoming, but they returned to Nebraska for the trial.

Trial was held on October 12, 2001. At the time, as noted above, Tim and Rhonda were the parents of eight minor children: Jennifer (age 17), John (age 15), Rebekah (age 13), Timothy (also known as Nathan, age 12), Joanna (age 10), Julia (age 4), Faith (age 3), and James (age 1). Tim was self-employed in the construction business, primarily installing vinyl siding and doing light carpentry work. Rhonda has principally stayed home with the children, with the exception of assisting Tim from time to time with his work, though she has also acquired training in income tax return preparation. The record reflects that Tim's educational background consists of 3 years of college and that Rhonda has 2½ years of college majoring in education.

From 1991 through 1999, with the exception of one school year, the Nebraska Department of Education granted Tim and Rhonda an exemption under rule 13 of the Nebraska Department of Education's regulations and procedures which allowed them not to meet approval or accreditation regulations concerning the education of their children based on religious reasons. However, for the school years of 1997-98, 1999-00, and 2000-01, Tim and Rhonda failed to file the necessary exemption forms. The exemption is authorized by 92 Neb. Admin. Code, ch. 13, § 001.01 (1989), and Neb. Rev. Stat. §§ 79-1601 et seq. (Reissue 1996 & Cum. Supp. 2002), which generally provide for exemption from state accreditation or approval requirements, such as certification requirements for teachers in private, denominational, and parochial schools. However, rule 13 does not exempt parents from providing a program of instruction as required under § 79-1601(2). See 92 Neb. Admin. Code, ch. 13, § 004.03 (1989).

Rhonda and Tim chose to home-school their children because they wanted the children to have a Christian education, because they wanted to incorporate the children's education into their lifestyle, and because it was convenient and flexible to do so given Tim's line of work. With the exception of the oldest child, Jennifer, who attended kindergarten and first grade in traditional private school settings, none of the school-age children have received any type of education outside of a home setting.

At trial, three of the five oldest children testified on behalf of the State regarding their educational experience in being home-schooled. The record reflects that from approximately 1991 through 1999, Tim and Rhonda utilized primarily the "Accelerated Christian Education" (A.C.E.) curriculum that consisted of five major subjects: mathematics, English, social studies, science, and etymology. However, for a short time during that period, they switched to the "Christian Light Education" curriculum and home-schooled three of the children (Jennifer, John, and Rebekah) with two other families. For the most part, Rhonda has served as the children's teacher and supervised their education until approximately December 1999. Jennifer testified that at that time, the children being home-schooled "just kind of quit" working on their schoolwork because Tim and Rhonda were busy and because she, John, Rebekah, Timothy, and Joanna did not want to work on their studies by themselves. Jennifer stated that after that time, she did a lot of babysitting, and that in February 2001, she got a job working mainly daytime hours. Jennifer further indicated in her testimony that starting in approximately April 2001, she participated in another home-school curriculum, "American School," until she left home in July 2001 and decided to pursue her GED. With regard to the other children being home-schooled, Jennifer testified that they quit working on their curriculum at approximately the same time that she did on hers and had not worked on any curriculum since.

John, the second-oldest child, testified that with the exception of working in his schoolbooks for approximately 4 months before trial, he had been working with his father in the construction business since August 1999. John stated that he worked approximately 35 hours per week, with a lesser amount of hours during the winter and on hot summer days. John further testified that his younger school-age siblings likewise stopped participating in any type of schoolwork as of August 1999. John's testimony was confirmed by Rebekah, who also stated that the children were not being home-schooled and who added that she had been cooking and babysitting.

Both Jennifer and John testified that they had had discussions with Tim and Rhonda about not doing any schoolwork. Both indicated that Tim and Rhonda were concerned about the children's

not getting an education and that Tim and Rhonda felt bad because they did not have the financial resources to obtain the necessary schoolbooks that were appropriate for each of the children's grade levels. Jennifer testified that although the children had some schoolbooks for the A.C.E. program, they did not have enough books to complete the necessary grades, and that Tim and Rhonda did not start the children on the A.C.E. curriculum because they knew the children could not finish each grade.

Although Rhonda did not specifically dispute any of the testimony of the three children who testified, her version and interpretation of the children's education was somewhat different. Rhonda testified that she has utilized different methods of schooling over the years because some of her children have learning challenges. The first method Rhonda described resembled a traditional, structured setting wherein she would start school at 9 a.m. and the children would have recesses, bells, et cetera. However, Rhonda indicated that this method was too rigid and did not work for the family. She then utilized a method that focused on individualized learning wherein the children would work on their schoolwork without any set rituals and Rhonda would monitor them throughout the day. The last method Rhonda described is called the "interest based" or "unschooling" method. She described this as a method wherein "you don't sit down to books, you don't test, you don't — Basically you're not doing books, but you're still teaching them." She further described this method as being similar to "a day in the summer . . . when the kids are out of school" and are spending time with Tim and Rhonda throughout their day. Rhonda further indicated that she has extensive resources available for the children to study under this method, such as encyclopedias and science books, and that when Tim and Rhonda did not have the financial resources to purchase the A.C.E. curriculum, she utilized the "interest based" or "unschooling" method to educate the children. Rhonda stated that she tried not to use this method beyond an 18-month period of time without utilizing the A.C.E. program.

Tim's mother and the minister of Tim and Rhonda's church also presented testimony on behalf of Tim and Rhonda. Both witnesses testified that the children read and communicated

well. Tim's mother, a former teacher, indicated that as a result of her "informal" testing, she found that the children were achieving at the appropriate level in all subjects except in mathematics. However, she was unable to identify what grade level each of the children had reached. With regard to testing, Rhonda also testified that when she would take time off from teaching the children, she would administer some type of diagnostic testing so that she would know where to "put [the children] back into the curriculum" and that with the exception of Jennifer, the last time the school-age children were tested was August 2001, when all of those children tested at or above their appropriate level except in mathematics. No documentary evidence was offered to support this testimony. However, evidence was presented in connection with Jennifer's brief performance in the "American School" program, which evidence reflected test grades ranging from 83 to 100 percent in subjects pertaining to U.S. history and psychology.

Testimony was also presented by Elaine Bump, a family friend of Tim and Rhonda's and the foster parent of Jennifer. Bump testified that she initially became concerned about the education of Tim and Rhonda's children after December 1995. Prior to this time, Bump and Rhonda taught the children in a church school located in Mitchell, Nebraska. However, when the school was unable to continue, Bump taught four of Tim and Rhonda's children in her home until they ran out of curriculum in December 1995. Bump indicated that Tim and Rhonda eventually were able to get more curriculum in 1996, but only for a few months. Bump continued to be concerned about the children's education and spoke about it with Rhonda, who voluntarily expressed her own concern about the children's education due to the fact that Tim and she did not have the financial resources to buy the curriculum needed. In approximately October 2000, Bump, still concerned about the children, suggested to Rhonda that she consider placing the children in a small public school south of Gering. Rhonda was hesitant to do so because she was uncertain what grade level the children should be placed at "when they have had no schooling for three years." However, we note from the record that after the family moved to Wyoming, Tim and Rhonda sought approval from the

State of Wyoming to home-school their children. A review of the approval forms, completed by Rhonda in her handwriting, indicates that she assigned grade levels for each of the school-age children.

Jennifer left her family's home in July 1999 because of the amount of stress in the home and Tim's allegedly harsh disciplinary practices. After Jennifer left home, she went to live with Bump. Bump arranged to have Jennifer tested so that she could get her high school diploma through the GED program. Bump had problems getting Jennifer enrolled in the GED program because there was no proof of any of Jennifer's education or grades for 4 years. However, Bump was able to reconstruct Jennifer's education through the end of seventh grade and a small portion of eighth grade. At the time of trial, Jennifer had pretested for the GED program and was ready to take the final tests in every subject except mathematics.

The juvenile court adjudicated the five oldest children to be juveniles within the meaning of § 43-247(3)(a) and found Tim and Rhonda to be in noncompliance with § 79-1601. The court specifically found that Tim and Rhonda had failed to provide the annual statement required for attendance, failed to maintain attendance, failed to provide a minimum school term of 1,032 instructional hours, and failed to maintain a sequential instructional program. Tim and Rhonda subsequently filed this appeal. We note that the State has not filed a brief.

## ASSIGNMENTS OF ERROR

Tim and Rhonda allege, restated, that the juvenile court erred in adjudicating the five oldest children under § 43-247(3)(a) in that there was insufficient evidence to support the juvenile court's findings that (1) the court had jurisdiction over those children and (2) Tim and Rhonda failed to provide the proper or necessary education for those children.

## STANDARD OF REVIEW

■ Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002).

ANALYSIS

*Jurisdiction.*

On appeal, we first address Tim and Rhonda's allegation that there was insufficient evidence to support the finding that the juvenile court had jurisdiction over the five oldest children.

■ The purpose of the adjudication phase is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase. *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d 727 (2001). To obtain jurisdiction over a juvenile, a court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Sabrina K., supra.* In addition, at the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of T.M.B. et al.*, 241 Neb. 828, 491 N.W.2d 58 (1992). If the pleadings and evidence at an adjudication hearing do not justify a juvenile court's acquiring jurisdiction of a child, the juvenile court has no jurisdiction to order a parent to comply with the rehabilitation plan; nor does it have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proved by new facts at a new adjudication-disposition hearing. *In re Interest of Constance G.*, 3 Neb. App. 1, 520 N.W.2d 784 (1994), *rev'd* 247 Neb. 629, 529 N.W.2d 534 (1995).

■ As stated above, the record reflects that the family lived in Gering, Nebraska, at the time the petitions were filed but, with the exception of Jennifer, had moved to LaGrange, Wyoming, approximately 2 months prior to the adjudication hearing. While Tim and Rhonda allege error with respect to the juvenile court's finding that it had jurisdiction of the children adjudicated, Tim and Rhonda do not specifically argue that their out-of-state residency at the time of the adjudication hearing had any impact on the jurisdiction of the court. Rather, it appears from the record that Tim and Rhonda voluntarily availed themselves, and those children, of the jurisdiction of the juvenile court to determine whether those children should be adjudicated as juveniles under § 43-247(3)(a) as alleged in the petitions. Section 43-247(3) gives a juvenile court exclusive original jurisdiction over "[a]ny

juvenile . . . whose parent, guardian, or custodian neglects or refuses to provide proper . . . education, or other care necessary for the health, morals, or well-being of such juvenile." That jurisdiction continues "until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." § 43-247. Further, when a juvenile court adjudicates a minor under § 43-247, it also obtains exclusive jurisdiction over the "parent, guardian, or custodian who has custody of any juvenile described in this section." § 43-247(5). Accord *In re Interest of Sabrina K., supra.* While the Nebraska Department of Education may no longer have any interest in this family as a result of the move to Wyoming, our concern is whether the children have been provided proper education in the context of a juvenile court adjudication.

The pleadings filed on behalf of each of the five oldest children allege that the parent, guardian, or custodian of the named child "neglects or refuses to provide proper or necessary education for the child, to wit: the child is not regularly attending any public, private, denominational or parochial school or any public, private, denominational or parochial school which meets the requirements of section 79-1601(2) through (5)." The evidence presented at the adjudication hearing clearly established, by a preponderance of evidence, that Tim and Rhonda's five oldest children had essentially not participated in any type of education curriculum since the latter part of 1999 and, as discussed in the following section, was sufficient to support the finding that the court had jurisdiction over those children. Therefore, we find no merit to this assignment of error.

*Sufficiency of Evidence.*

With regard to the sufficiency of the evidence to support the five oldest children's adjudication under § 43-247(3)(a) in connection with Tim and Rhonda's failure to provide them a proper education, § 79-1601(4) provides in relevant part that any private, denominational, or parochial school in the State of Nebraska which elects not to meet state accreditation or approval requirements shall "maintain a sequential program of instruction designed to lead to basic skills in the language arts, mathematics, science, social studies, and health." And, although parents have a

right to send their children to schools other than public institutions, they do not have the right to be completely unfettered by reasonable government regulations as to the quality of the education furnished. *State ex rel. Douglas v. Faith Baptist Church*, 207 Neb. 802, 301 N.W.2d 571 (1981). In addition, parents may be enjoined from operating a school in their home without complying with the school laws of the State of Nebraska and also may be subjected to criminal penalties. See, *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 343 N.W.2d 903 (1984); § 79-1607.

Specifically, Tim and Rhonda argue that there was insufficient evidence presented to demonstrate that any alleged lack of education had any impact on the children, that the record contains undisputed evidence that the "children were at or above their grade level in practically all of their subjects," and, thus, that the State failed to prove that Tim and Rhonda failed to provide the proper or necessary education for their five oldest children. Brief for appellant at 10. They further contend that the children's level of performance was supported by testing, but no documentary evidence was offered to support this contention other than Jennifer's grades from the "American School" program.

In support of Tim and Rhonda's position, they cite *In re Interest of Brianna B. & Shelby B.*, 9 Neb. App. 529, 614 N.W.2d 790 (2000), wherein this court found insufficient evidence to warrant an adjudication of two minor children under § 43-247(3)(a) based on a lack of proper parental care or supervision because of the parents' alleged alcoholism. In *In re Interest of Brianna B. & Shelby B.*, we found that there was no evidence presented to show any impact that the parents' drinking had on the children and that there was no evidence of the children's being placed in harm or lacking proper care as a result of the drinking. Therefore, we reversed the adjudication order with directions to dismiss.

Our research has found no Nebraska case law dealing with the adjudication of minor children under § 43-247(3)(a) based upon a parent's failure to provide a proper and necessary education in a home-school setting; nor do Tim and Rhonda refer us to any such case law. While the thrust of Tim and Rhonda's argument alleges insufficiency of evidence showing that the children were impacted in any way from the alleged lack of education, we disagree.

The record in this case is replete with evidence that Tim and Rhonda have failed to provide the proper and necessary education for their children, as required by § 43-247, from late 1999 until early 2001. No "sequential program of instruction," § 79-1601(4), has been utilized with any of the children since 1999. Tim and Rhonda have not been granted a rule 13 exemption by the Nebraska Department of Education since 1999. Essentially, the school-age children have been working in the parents' business or at home without the benefit of any formalized educational curriculum. Rhonda admitted that she was uncertain in what grade the children should be placed in order to attend public school. To say that this lack of education has not had a negative impact on the children is unrealistic, at best.

Based upon our de novo review of the record, we find that there was a sufficient amount of evidence to support the juvenile court's finding that Tim and Rhonda had neglected or refused to provide the proper or necessary education for their five oldest children. We find no merit to this assignment of error.

## CONCLUSION

Based on our de novo review of the record, we conclude that there was sufficient evidence to support the juvenile court's findings that it had jurisdiction over each of the five oldest children and to adjudicate them under § 43-247(3)(a). We further conclude that there was sufficient evidence to support the State's allegation that Tim and Rhonda failed to provide the proper or necessary education for their five oldest children.

AFFIRMED.

IRWIN, Chief Judge, participating on briefs.