IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF JAXYN S.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF JAXYN S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CHRISTOPHER K., APPELLANT.


Filed November 29, 2016.    No. A-16-495.


Appeal from the Separate Juvenile Court of Douglas County: WADIE THOMAS, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Ryan T. Locke for appellant.

Donald W. Kleine, Douglas County Attorney, Patrick McGee, and Chellsie Weber, Senior Certified Law Student, for appellee.


INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

MCCORMACK, Retired Justice.

INTRODUCTION

Christopher K. appeals from an order of the juvenile court which adjudicated his minor child, Jaxyn S. (referred to as "Jaxyn K." in the proceedings below), to be a juvenile as defined in Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015). On appeal, Christopher asserts that there was insufficient evidence to warrant the adjudication of Jaxyn pursuant to § 43-247(3)(a). Upon our de novo review of the record, we find sufficient evidence to support the juvenile court's order to adjudicate Jaxyn under § 43-247(3)(a) as to Christopher.

- 1 -

BACKGROUND

The juvenile court proceedings below, which were initiated in October 2015, originally involved both Jaxyn and his brother, Benjamin S.-K. However, this appeal involves only Jaxyn, born October 2013. Jaxyn is the biological son of Christopher and Briana S. The status of Christopher's and Briana's relationship is not clear from our record. In addition, Christopher's role in Jaxyn's life from the time of his birth through October 2015 is not clear from our record.

On October 29, 2015, the State filed a petition in the juvenile court seeking to adjudicate Jaxyn and Benjamin as children within the meaning of § 43-247(3)(a) as to Briana. In the petition, the State alleged that the boys were at risk for harm due to the fault or habits of Briana, in that Briana was homeless and her whereabouts were unknown, and Briana had failed to provide the boys with appropriate housing, proper parental care, or supervision. Given the allegations in the petition, Jaxyn was placed in the custody of the Department of Health and Human Services (the Department). The Department then placed Jaxyn in the home of his paternal grandparents, Mike and Sara K., who had taken care of Jaxyn intermittently throughout his life.

When the Department placed Jaxyn in the home of his grandparents, Christopher was also living in the home as a condition of his participation with "drug court." Christopher admitted to having a history of methamphetamine use. However, by October 2015, Christopher had been sober for 7 or 8 months and had recently been admitted to Douglas County's Adult Drug Court after he pled guilty to possession of a controlled substance, a Class IV felony.

Christopher lived with Jaxyn in Christopher's parents' home until December 2015 when he moved into a sober living environment which he referred to as a "three-quarter way house." Christopher did not attempt to take Jaxyn with him when he moved.

On December 8, 2015, the State filed a supplemental petition seeking to adjudicate Jaxyn as a child within the meaning of § 43-247(3)(a) as to Christopher. In the petition, the State alleged that Jaxyn was at risk for harm due to the fault or habits of Christopher, in that Christopher had failed to provide Jaxyn with appropriate housing, proper parental care, or supervision, and Christopher had stated that he is not capable of providing any custodial care for Jaxyn due to his ongoing recovery from drug addiction. At the time the State filed the supplemental petition, Jaxyn remained in the custody of the Department and was placed with his paternal grandparents.

In April 2016, a hearing was held on the State's supplemental petition. At the hearing, two witnesses testified: Kristin Sanford, a Department employee who had been assigned to the family's case and Sara, Christopher's mother and Jaxyn's foster parent.

Sanford testified that she spoke with Christopher in late October 2015, after Mike and Sara became Jaxyn's foster parents. At that time, Christopher indicated that even though he was living in the same house as Jaxyn, he was not providing any care or support for Jaxyn. Christopher told Sanford that he wanted his parents to care for Jaxyn. Sanford indicated that the Department did not consider Jaxyn to be at risk for harm due to Christopher living with Jaxyn at Mike and Sara's home because Mike and Sara "were providing all of the care for Jaxyn" and the Department had custody of Jaxyn.

Sanford spoke with Christopher again in December 2015, when Christopher was moving out of Mike and Sara's home. At this time, Christopher reiterated that he wanted his parents to continue to care for Jaxyn. He also indicated that he needed to be focused on maintaining his

sobriety before he could be a parent for Jaxyn. Christopher was unable to provide Sanford with any sort of time line for when he may be able to begin caring for Jaxyn. Sanford testified that by December 2015, it was her opinion that Jaxyn would have a "very high risk for harm if he remained in the custody and care of [Christopher]."

Sara testified that she has been involved in Jaxyn's life since his birth. In fact, Jaxyn lived with Sara and Mike for six months immediately after his birth. Sara also testified that Christopher has not used drugs since March 2015 and that she had no concerns about Christopher being around Jaxyn. However, she also testified that she and Mike were always present when Christopher was with Jaxyn. Sara testified that from October 2015 to December 2015, Christopher had helped care for Jaxyn by changing his diapers, feeding him, playing with him, and getting him ready for bed.

At the close of the evidence, the juvenile court found that Jaxyn was a child within the meaning of § 43-247(3)(a) as to Christopher. Specifically, the court found:

> [T]he father has a history of substance abuse, including methamphetamine; that the father admitted in December of 2015, at or around the time of the filing of the supplemental petition, that he was not in the position to parent the minor child because he needed to focus on his own sobriety and recovery, and he further admitted that he did not know how long that would take.
>
> The Court also finds the father admitted that he has not provided any care and support for the minor child, but instead wanted his parents, meaning the paternal grandparents of the child, to provide that care and support; that the child has lived with the paternal grandparents most of his life and most recently, from October 2015 to the present.

Christopher appeals from the court's decision to adjudicate Jaxyn.

## ASSIGNMENTS OF ERROR

On appeal, Christopher asserts that the juvenile court erred in determining that Jaxyn was a juvenile within the meaning of § 43-247(3)(a) because the State did not prove that Jaxyn was at risk for harm due to Christopher's faults or habits.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

Christopher argues that the juvenile court erred in adjudicating Jaxyn as a child within the meaning of § 43-247(3)(a). Before we address Christopher's specific assertions, we explain the statutory and case law which overlays our review of a juvenile court's decision regarding the adjudication of a minor child.

Section 43-247(3)(a) grants the juvenile court jurisdiction over any juvenile:

who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; . . . or who is in a situation or engages in an occupation . . . dangerous to life or limb or injurious to the health or morals of such juvenile . . . .

To obtain jurisdiction over a juvenile, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004). At this stage of the proceedings, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of B.R. et al.*, 270 Neb. 685, 708 N.W.2d 586 (2005); *In re Interest of Rebekah T. et al.*, 11 Neb. App. 507, 654 N.W.2d 744 (2002).

The purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase. *In re Interest of Brian B. et al.*, *supra*. The Nebraska Juvenile Code does not require the juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013). See, also, *In re Interest of W.C.O.*, 220 Neb. 417, 370 N.W.2d 151 (1985). However, while the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *In re Interest of Justine J. et al.*, *supra*. We now turn to our analysis of Christopher's claims on appeal.

In the State's supplemental petition, it alleged that Jaxyn was at risk for harm due to the fault or habits of Christopher, in that Christopher had failed to provide Jaxyn with appropriate housing, proper parental care, or supervision, and Christopher had stated that he is not capable of providing any custodial care for Jaxyn due to his ongoing recovery from drug addiction. Ultimately, the juvenile court found that the State had presented sufficient evidence to prove the allegations in the petition by a preponderance of the evidence. Upon our de novo review of the record, we cannot say that the juvenile court abused its discretion in this finding or in adjudicating Jaxyn to be a child within the meaning of § 43-247(3)(a) as to Christopher.

At the adjudication hearing, the State presented evidence that immediately prior to the filing of the supplemental petition, Christopher told the Department caseworker that he was not currently capable of parenting Jaxyn because he was focused on maintaining his sobriety. In addition, Christopher was unable to provide any sort of time line for when he may be ready to be a parent for Jaxyn. On two separate occasions, Christopher admitted to the Department caseworker that even when he was living with Jaxyn in Mike and Sara's home from October 2015 to December 2015, he was not providing any care or support for Jaxyn. Mike and Sara were Jaxyn's primary caregivers. Sara did testify at the hearing that Christopher helped to care for Jaxyn by changing his diapers, playing with him, and getting him ready for bed. However, even Sara admitted that

Christopher never independently cared for Jaxyn because she and Mike were always present when Christopher and Jaxyn were together.

This evidence, taken together, is sufficient to prove by a preponderance of the evidence the State's allegations that Christopher is not currently capable of appropriately caring for Jaxyn and that Christopher has failed to provide Jaxyn with proper parental care, support, or supervision. There is a definite risk of future harm to Jaxyn if he is permitted to remain in Christopher's custody without any intervention by the juvenile court.

We note that in his brief on appeal, Christopher argues that the evidence presented at the hearing demonstrated that he did, in fact, provide Jaxyn with appropriate housing and proper parental care, support, and supervision, by leaving Jaxyn with Mike and Sara and by authorizing them to care for Jaxyn in Christopher's absence. Christopher's assertions misrepresent the evidence. Christopher did not place Jaxyn in Mike and Sara's home, nor was he the person who authorized Mike and Sara to care for Jaxyn. The Department was given custody of Jaxyn by the juvenile court. The Department then placed Jaxyn in Mike and Sara's home. While Christopher did live with Mike, Sara, and Jaxyn in the home for a short period of time, by his own admission, he did not provide any substantial care or support to Jaxyn while they lived together. Accordingly, there is no evidence to support Christopher's assertion that he provided Jaxyn with appropriate housing and proper parental care, support, and supervision.

## CONCLUSION

Upon our de novo review of the record, and given that the purpose of the adjudication phase of juvenile court proceedings is to protect the interests of the child, we find sufficient evidence to support the juvenile court's order adjudicating Jaxyn under § 43-247(3)(a) as to Christopher.

AFFIRMED.