IN RE INTEREST OF JAC'QUEZ N.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLANT, V.
SELINA N., APPELLEE.
669 N.W.2d 429

Filed September 26, 2003.   No. S-02-1381.

James S. Jansen, Douglas County Attorney, and Karen Kassebaum Nelson for appellant.

Thomas C. Riley, Douglas County Public Defender, and Claudia L. McKnight for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

In this termination of parental rights case, the separate juvenile court of Douglas County granted the State's petition to terminate the parental rights of the father, Travis M., and denied the State's petition to terminate the parental rights of the mother, Selina N., to the child, Jac'Quez N. Travis does not appeal, and his parental rights to Jac'Quez stand terminated. The State appeals and asserts that the court erred when it failed to find that reasonable efforts at reunification with Selina were not required under Neb. Rev. Stat. § 43-283.01(4) (Reissue 1998), and when it failed to terminate Selina's parental rights. Based on the record before us, we determine that reasonable efforts at reunification are not required and that Selina's parental rights to Jac'Quez should be terminated due to aggravated circumstances under Neb. Rev. Stat. § 43-292(9) (Reissue 1998). We reverse that part of the juvenile court's order which failed to terminate Selina's parental rights and remand the cause with directions to the juvenile court to enter an order terminating Selina's parental rights to Jac'Quez.

## STATEMENT OF FACTS

Jac'Quez, born April 5, 2002, is the son of Selina and Travis. On June 17, 2002, the separate juvenile court of Douglas County

ordered that Jac'Quez be placed in the immediate temporary custody of the Nebraska Department of Health and Human Services (DHHS). The order was based on allegations that on June 12, Selina and Travis brought Jac'Quez to the University of Nebraska Medical Center's emergency room in Omaha with severe injuries that the supervising physician found to be consistent with child abuse, specifically, "shaken baby syndrome." Selina and Travis asserted that on June 10, Jac'Quez had rolled off the couch and hit his head on a telephone that was on the floor. It is undisputed that certain of his injuries were obvious and that Selina and Travis delayed seeking treatment until June 12. Examination revealed that Jac'Quez' injuries were so severe that he was expected to be blind and deaf and that his development was not expected to progress beyond its current state.

On August 5, 2002, the State petitioned the juvenile court seeking termination of the parental rights of both Selina and Travis. The State asserted as to both Selina and Travis that Jac'Quez was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002); that reasonable efforts to preserve and reunify the family were not required pursuant to § 43-283.01(4)(a) because Jac'Quez had been subjected to "aggravated circumstances"; that termination of parental rights was justified under § 43-292(2), (8), and (9); and that termination was in Jac'Quez' best interests.

Prior to trial, the State filed a motion in limine seeking to exclude as irrelevant any evidence pertaining to who actually inflicted the injuries on Jac'Quez. The State argued it was not relevant as to the case against either Selina or Travis whether that parent actually inflicted the abuse, only whether Jac'Quez was under Selina and Travis' control when the abuse occurred. The court overruled the State's motion in limine.

A hearing was held October 2 and 3, 2002. At the hearing, the State presented depositions of physicians who had treated Jac'Quez. Dr. Charles Gerald Judy stated that there had been an unnecessary delay in getting medical treatment for Jac'Quez and that the delay had contributed to a lack of oxygen to the brain. Dr. Judy also stated that it was obvious that Jac'Quez' injuries were caused by nonaccidental trauma or shaken baby syndrome. Dr. Judy initially feared that Jac'Quez' injuries would be

life threatening, and by the time of the hearing, he believed Jac'Quez would suffer moderately severe to severe developmental impairment and would likely be blind and possibly deaf. The State also presented the deposition of Dr. Jonathan Jaksha, a diagnostic radiologist who diagnosed Jac'Quez as suffering from a nonaccidental trauma and stated that Jac'Quez' injuries were consistent with his having been shaken.

The State presented the testimony of Dr. Lance Hoffman, an emergency room physician who had examined Jac'Quez. Dr. Hoffman questioned Selina and Travis regarding Jac'Quez' injuries when he was presented at the emergency room. Travis had told Dr. Hoffman that 2 days earlier, Jac'Quez had fallen off the couch while lying next to Travis and had struck his head against a telephone that was on the floor. Selina told Dr. Hoffman that over the past 2 days, Jac'Quez had not been acting like himself, had not been feeding well, had been crying intermittently, and had been making some twitching movements. As noted below, Selina reported to an Omaha police officer that she had seen other symptoms of injury between June 10 and 12, 2002.

According to Dr. Hoffman, when he informed Selina and Travis that he would need to report Jac'Quez' injuries to the Omaha Police Department and Child Protective Services, Selina told Travis, "I told you this was going to happen. I knew this was going to happen." Dr. Hoffman testified that Jac'Quez' injuries were not consistent with Selina and Travis' story of how the injuries were sustained but were instead caused by nonaccidental trauma or child abuse. At the time he examined Jac'Quez, Dr. Hoffman expected Jac'Quez would die within the next couple of days.

Dr. Amy Lacroix, a pediatrician who has been Jac'Quez' primary care physician since he was transferred out of the intensive care unit, testified that his head injuries and a fracture to his right leg were injuries associated with child abuse. Dr. Lacroix stated that Jac'Quez had severe cerebral palsy which may not get better over time. She was unsure whether he could see or hear. Dr. John Peters, an ophthalmologist, testified that Jac'Quez had retinal hemorrhages in both eyes, and Dr. Paul Larsen, a pediatric neurologist, testified that Jac'Quez had diffuse brain injury indicating a lack of oxygen, lack of blood supply, and massive swelling of the brain tissue.

Michele Bang, an Omaha police detective, testified that she interviewed Selina in the examining room at the hospital. Selina told Bang she had noticed that Jac'Quez' right eye was black and swollen when she came home from work on June 10, 2002. She also noticed a "change in consciousness" and shaking in his hands. She put ice on his injuries and went to bed. When she woke up the next morning, she noticed that he was unresponsive and was shaking. She went to work, and when she got home, Travis told her that Jac'Quez had not been eating. Travis suggested they take Jac'Quez to a doctor, but Selina wanted to wait until the next day. She did not want to take Jac'Quez to the doctor because she feared he would be taken from them because of the black eye.

The State presented the testimony of Jackie Fink, a DHHS protection and safety worker who was assigned to Jac'Quez' case. Fink testified that Jac'Quez had been in her custody since July 6, 2002. He had been placed with foster parents who were specially trained to deal with his medical needs, and the foster parents were willing to adopt him. Fink testified that due to Jac'Quez' medical needs, the nonaccidental nature of his injuries, and Selina and Travis' level of denial regarding the nature of his injuries, Fink believed it would be in Jac'Quez' best interests to terminate the parental rights of both Selina and Travis.

Shirley King, an initial assessment investigative worker for Child Protective Services, was assigned to Jac'Quez' case on June 17, 2002. King opined at the hearing that Jac'Quez would be in "extreme danger" if allowed to return to Selina's custody. King based this assessment on the nature and severity of the injuries Jac'Quez sustained and the fact that notwithstanding the obviousness of his injuries, no medical care was sought for 2 days after he sustained severe injuries.

The court on October 31, 2002, entered an order concluding by a preponderance of the evidence that, as to both Selina and Travis, Jac'Quez was a child within the meaning of § 43-247(3)(a). As to Travis only, the court found that Travis had subjected Jac'Quez to severe and extreme physical injury and concluded that reasonable efforts to reunify were not required, that termination of Travis' parental rights was appropriate under § 43-292(8) and (9) but not subsection (2), and that termination of Travis' parental rights was in Jac'Quez' best interests. As to Selina only, the court concluded

that other than the determination that Jac'Quez was a child within the meaning of § 43-247(3)(a), the State had failed to meet its burden of proof, and that therefore reasonable attempts to reunify Jac'Quez with Selina should be attempted and the counts relating to termination of Selina's parental rights should be dismissed. The court therefore ordered that Travis' parental rights be terminated, that Jac'Quez remain in the custody of DHHS, and that a review and permanency planning hearing be scheduled in approximately 6 months. Travis has not appealed. The State appeals the order of the juvenile court as it relates to Selina.

## ASSIGNMENTS OF ERROR

The State asserts that the juvenile court erred by (1) failing to find that, as to Selina, reasonable efforts at reunification were not required under § 43-283.01(4)(a) because she had subjected Jac'Quez to "aggravated circumstances"; (2) failing to terminate Selina's parental rights under § 43-292(9) because she had subjected Jac'Quez to "aggravated circumstances"; and (3) failing to terminate Selina's parental rights under § 43-292(2) because she had "substantially and continuously or repeatedly neglected" Jac'Quez.

## STANDARDS OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Joshua R. et al.*, 265 Neb. 374, 657 N.W.2d 209 (2003). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.* Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests. *Id.*

## ANALYSIS

*Reasonable Efforts at Reunification and*
*Aggravated Circumstances Under § 43-283.01(4).*

Section 43-283.01(4) provides, in relevant part, as follows: "Reasonable efforts to preserve and reunify the family are not

required if a court of competent jurisdiction has determined that: (a) The parent of the juvenile has subjected the juvenile to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse."

The State asserts that the record shows that Selina subjected Jac'Quez to "aggravated circumstances" as used in § 43-283.01(4)(a). The State argues that reasonable efforts to reunify Selina and Jac'Quez were therefore not required and that the juvenile court's ruling to the contrary was error.

With respect to this assignment of error, the State urges that for purposes of § 43-283.01(4), it should be required to prove the facts excusing reunification by a mere preponderance of the evidence rather than by clear and convincing evidence. With respect to the merits, the State argues that Selina's actions, particularly her refusal to obtain medical attention for Jac'Quez for 48 hours after he had obviously sustained serious injuries, amounted to "aggravated circumstances," a fact which excuses reasonable efforts at reunification. As explained below, we conclude that the State was required to prove an exception under § 43-283.01(4) by clear and convincing evidence rather than a preponderance of the evidence. We further conclude that on the record in this case, the State met its burden of proving by clear and convincing evidence that Selina subjected Jac'Quez to "aggravated circumstances" under § 43-283.01(4)(a), and that therefore reasonable efforts at reunification were not required. The juvenile court's ruling directing continued efforts at reunification was error.

Regarding the burden of proof, we note that Neb. Rev. Stat. § 43-279.01(3) (Reissue 1998) provides, in part, that a juvenile court

> shall make a finding and adjudication to be entered on the records of the court as to whether the allegations in the petition have been proven by a preponderance of the evidence in cases under subdivision (3)(a) of section 43-247 or by clear and convincing evidence in proceedings to terminate parental rights.

Consistent with this statute, this court has previously stated that at the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State

must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of T.M.B. et al.*, 241 Neb. 828, 491 N.W.2d 58 (1992). We have also stated that in order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Joshua R. et al.*, 265 Neb. 374, 657 N.W.2d 209 (2003). Neither statute nor prior decision of this court has stated what burden of proof is applicable to a determination under § 43-283.01(4) regarding whether reasonable efforts at reunification should be excused.

We note that various states have statutes which specifically require clear and convincing evidence in order to excuse the requirement of reasonable efforts at reunification. See, Ark. Code Ann. § 9-27-303(45)(C) (Lexis Supp. 2003); Cal. Welf. & Inst. Code § 361.5(b) (West Cum. Supp. 2003); Conn. Gen. Stat. Ann. § 17a-111b (West Cum. Supp. 2003); Ga. Code Ann. § 15-11-58(h) (Lexis Supp. 2003); Iowa Code Ann. § 232.57(2) (West Cum. Supp. 2003); La. Children's Code Ann. art. 672.1(B) (West Cum. Supp. 2003); Minn. Stat. Ann. § 260.012(b)(3) (West 2003); Mont. Code Ann. § 41-3-423(4) (2001); 42 Pa. Cons. Stat. Ann. § 6351(e)(2) (West Cum. Supp. 2003); S.D. Codified Laws § 26-8A-21.1(3) (Lexis Supp. 2003). In other states, case law establishes that the clear and convincing standard should be applied to the question of whether or not reasonable efforts at reunification are required. See *New Jersey Div. v. A.R.G.*, 361 N.J. Super. 46, 824 A.2d 213 (2003). But see *Dependency of J.W.*, 90 Wash. App. 417, 953 P.2d 104 (1998) (holding that aggravated circumstances which make services unlikely to effectuate reunification may be proved by preponderance of evidence).

■ Upon due consideration, we hold that a finding of a fact, such as aggravated circumstances under § 43-283.01(4)(a), that excuses the requirement of reasonable efforts at reunification under § 43-283.01(4) must be based on clear and convincing evidence. In connection with our ruling, we note that dispensing with reasonable efforts at reunification frequently amounts to a substantial step toward termination of parental rights. It follows that the requisite standard of proof for such determination should be at the level required for a termination of parental rights, and

therefore the determination to excuse reasonable efforts at reunification under § 43-283.01(4) should be supported by clear and convincing evidence. To the extent that *In re Interest of Janet J.*, 12 Neb. App. 42, 666 N.W.2d 741 (2003), indicates a different burden of proof as to § 43-283.01(4), it is hereby disapproved.

Having concluded that "aggravated circumstances" which excuse reasonable efforts at reunification must be shown by clear and convincing evidence, we now consider whether that standard was met in the present case. We must therefore determine whether Selina's actions fell within the meaning of "aggravated circumstances" under § 43-283.01(4)(a). Section 43-283.01(4)(a) provides that reasonable efforts to reunify are not required if the parent "has subjected the juvenile to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse." The statutes do not further define the term "aggravated circumstances." Although the statute lists abandonment, torture, chronic abuse, and sexual abuse as examples of aggravated circumstances, the "but not limited to" language clearly signifies that the list is not exhaustive.

This court has not previously addressed the meaning and scope of "aggravated circumstances" under § 43-283.01(4)(a). We note that § 43-283.01 was enacted in response to a portion of the federal Adoption and Safe Families Act of 1997, 42 U.S.C. 671(a) (2000), which provides, inter alia, that reasonable efforts to preserve and reunify families are not required when the parent has subjected his or her child to aggravated circumstances as defined by state law. Other states have also adopted statutes in response to the federal statute, and elsewhere the term "aggravated circumstances" has been explained either by statute or by case law.

In *New Jersey Div. v. A.R.G.*, 361 N.J. Super. 46, 76, 824 A.2d 213, 233 (2003), the Superior Court of New Jersey noted that the determination of whether aggravated circumstances exist must be made on a case-by-case basis and that it is not possible or necessary to determine the entire universe of "aggravated circumstances." After reviewing the legislation and case law in various states establishing criteria to determine the existence of aggravated circumstances, the Superior Court of New Jersey found certain common threads, or themes, that were consistent

with the intent and purpose of the federal legislation. The court concluded that

> the term "aggravated circumstances" embodies the concept that the nature of the abuse or neglect must have been so severe or repetitive that to attempt reunification would jeopardize and compromise the safety of the child, and would place the child in a position of an unreasonable risk to be reabused.

*Id.* The Court further noted that "where the circumstances created by the parent's conduct create an unacceptably high risk to the health, safety and welfare of the child, they are 'aggravated' to the extent that the child welfare agency . . . may bypass reasonable efforts of reunification." *Id.* The Court also noted that "whether the offer or receipt of services would correct the conditions that led to the abuse or neglect within a reasonable time may also be considered." *Id.* at 77, 824 A.2d at 234.

We believe the considerations articulated by the New Jersey Superior Court are helpful, and we apply these considerations to the present case. We find that the record in this case presents clear and convincing evidence that Selina subjected Jac'Quez to aggravated circumstances under § 43-283.01(4)(a). Although the evidence does not tend to establish that Selina inflicted the initial injuries on Jac'Quez, it clearly and convincingly establishes that she delayed seeking medical treatment for 48 hours after he had received obvious and serious injuries, thus severely neglecting his medical needs. Given the undisputed evidence consisting, inter alia, of the fact that Jac'Quez had a black and swollen eye and was unresponsive and shaking, it should have been apparent to Selina that Jac'Quez had a serious physical problem, but she nevertheless refused to seek treatment for 2 days, apparently because she feared Jac'Quez would be taken from her. Considering that Jac'Quez suffered severe, permanent damage as the result of his injuries and considering that when medical treatment was finally sought, the doctors feared his injuries would be life threatening, it is clear that the delay caused by Selina created an unacceptable risk to Jac'Quez' health.

As noted by the New Jersey Superior Court, a finding that aggravated circumstances excuse reasonable efforts at reunification is to be determined in the context of whether an attempt at

reunification would jeopardize and compromise the safety of the child and would place the child in a position of an unreasonable risk to be abused again. See *New Jersey Div. v. A.R.G., supra.* In the present case, Jac'Quez' current condition is such that he needs a higher than normal level of care and attention and the prospect is that he will always need this heightened level of care. Selina's failure in the past indicates that an attempt to reunify her with Jac'Quez, now a child with heightened needs, would jeopardize and compromise his safety and would engender an unreasonable risk that his needs would again be ignored at the peril of his health and well-being.

Following our de novo review, we find that there was clear and convincing evidence Selina subjected Jac'Quez to aggravated circumstances and that the juvenile court erred when it declined to find that reasonable efforts at reunification under § 43-283.01(4) should be excused.

### Termination and Aggravated Circumstances Under § 43-292(9).

The State next argues that the juvenile court erred in failing to terminate Selina's parental rights under § 43-292(9) which provides that parental rights may be terminated when termination is found to be in the best interests of the child and the "parent of the juvenile has subjected the juvenile to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse." We find that there was clear and convincing evidence Selina subjected Jac'Quez to "aggravated circumstances" under § 43-292(9) and that termination of Selina's parental rights is in Jac'Quez' best interests. The juvenile court erred in failing to terminate Selina's parental rights pursuant to § 43-292(9).

In connection with the previous assignment of error, we determined that the State proved by clear and convincing evidence that Selina subjected Jac'Quez to "aggravated circumstances" under § 43-283.01(4)(a). We find that the same clear and convincing evidence establishes that Selina subjected Jac'Quez to "aggravated circumstances" under § 43-292(9). However, in order to find that termination of Selina's parental rights would be appropriate, we must also find that termination would be in Jac'Quez' best interests.

The testimony of the doctors in the present case establishes that Jac'Quez suffers from severe impairments, that he will most probably be blind and deaf, and that his development is not expected to progress beyond his current stage. Fink, Jac'Quez' caseworker, testified that due to Jac'Quez' medical needs, the nonaccidental nature of his injuries, and Selina and Travis' level of denial regarding the nature of his injuries, it would be in Jac'Quez' best interests to terminate the parental rights of both Selina and Travis. King, the investigative worker for Child Protective Services, testified that Jac'Quez would be in "extreme danger" if returned to Selina's custody. Furthermore, the evidence established that Jac'Quez has been placed with foster parents who are specially trained to deal with his special medical needs and that the foster parents are willing to adopt Jac'Quez. Because a return to Selina's custody would present an unacceptable risk that Jac'Quez' heightened needs would not be fulfilled, we find that it would be in Jac'Quez' best interests to terminate Selina's parental rights.

Following our de novo review, we find that clear and convincing evidence in the record established that Selina subjected Jac'Quez to aggravated circumstances under § 43-292(9) and that termination of Selina's parental rights was in Jac'Quez' best interests. We therefore conclude that the juvenile court erred when it failed to terminate Selina's parental rights pursuant to § 43-292(9).

*Termination and Substantial and Continuous or Repeated Neglect Under § 43-292(2).*

The State also asserts that the juvenile court erred in failing to terminate Selina's parental rights under § 43-292(2) because she "substantially and continuously or repeatedly neglected" Jac'Quez. In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Joshua R. et al.*, 265 Neb. 374, 657 N.W.2d 209 (2003). Because we have concluded that Selina's parental rights should have been terminated pursuant to § 43-292(9), it is not necessary to determine whether termination was also appropriate under § 43-292(2). See *id.* We therefore do not address the State's third assignment of error.

## CONCLUSION

We conclude that under § 43-283.01(4), in order to establish that reasonable efforts to preserve or reunify the family are not required, the State must present clear and convincing evidence. Upon our de novo review, we find that the State met its burden in this case and that therefore, reasonable efforts to reunify Selina with Jac'Quez were not required. We further determine that the juvenile court erred when it failed to find that the State had proved by clear and convincing evidence that Selina subjected Jac'Quez to aggravated circumstances under § 43-292(9) and that termination of Selina's parental rights was in Jac'Quez' best interests. We therefore reverse that portion of the juvenile court's order in which it failed to terminate Selina's parental rights, and we remand the cause with directions to the juvenile court to enter an order terminating Selina's parental rights. The portion of the juvenile court's order terminating Travis' parental rights was not in dispute in this appeal, and Travis' parental rights to Jac'Quez stand terminated.

REVERSED AND REMANDED WITH DIRECTIONS.