694 N.W.2d 659 (2005)
269 Neb. 653
In re Interest of HEATHER R. et al., children under 18 years of age.
State of Nebraska, appellee,
v.
Chad K. and Michelle K., appellants.
No. S-04-767.
Supreme Court of Nebraska.
April 8, 2005.
*661 Matthew K. Kosmicki for appellants.
Steven D. Sunde, Deputy Cass County Attorney, for appellee.
HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

NATURE OF CASE
MILLER-LERMAN, J.
Chad K. and Michelle K. appeal the June 22, 2004, order of the county court for Cass County, sitting as a juvenile court, adjudicating Heather R., Chad "C.J." K. (C.J.), and Andrea K. to be juveniles as described in Neb.Rev.Stat. § 43-247(3)(a) (Cum.Supp.2002). Chad and Michelle assert that they were denied effective assistance of counsel, that their due process rights were violated because their joint representation by court-appointed counsel posed a conflict of interest, and that there was insufficient evidence to support the court's order. We determine that an ineffective assistance of counsel claim was not available in these juvenile adjudication proceedings in which counsel was appointed pursuant to statute and that appointment was not required under the federal Constitution. Further, because Chad and Michelle were afforded due process and the evidence is sufficient to support the court's order, we affirm the order of adjudication.

STATEMENT OF FACTS
On May 13, 2004, Heather reported to a counselor at her middle school that on May 11 her stepfather, Chad, had hit her with a belt, leaving visible marks on her buttocks. Heather told the counselor that the reason Chad hit her was because she had let a dog out and that when she told Chad she did not know how long the dog had been out, he told her he should hit her for that too. Heather also told the counselor that Chad had hit her on the shoulder on March 25.
The counselor reported the incident to the Department of Health and Human Services. Investigator David Heidbrink of the Nebraska State Patrol, investigated the incident. On May 14, Heather's injuries were examined by a pediatrician, Dr. Laura Wilwerding. After Dr. Wilwerding's examination of Heather and Heidbrink's investigation, Heather and her brother, C.J., and their sister, Andrea, were taken into emergency protective custody for the Department of Health and Human Services to arrange temporary foster care placement.
On May 18, 2004, the State filed a petition for adjudication in the juvenile court. The State alleged that Heather, born November 11, 1991; C.J., born December 20, 1994; and Andrea, born February 1, 1998, came within the meaning of § 43-247(3)(a) because they lacked proper parental care by reason of the fault or habits of their parents; their parents neglected *662 or refused to provide proper or necessary care for their health, morals, or well-being; or they were in a situation dangerous to life or limb or injurious to their health or morals.
The allegations in the petition were extensive and included allegations as to each child and each parent, not repeated here. The specifics of the May 11, 2004, incident were alleged in the petition, including further details in which C.J. stated that Heather was screaming and crying after the "latest beating." Other incidents were alleged, including one episode in which Chad is alleged to have hit Heather across the face or head with his hand and cracked her on the head with his knuckles. The allegations included a report by Dr. Wilwerding who observed "linear type bruises on Heather's buttocks consistent with being beaten with a belt."
A hearing on the petition was held June 22, 2004. At the hearing, the children were represented by a guardian ad litem and Chad and Michelle were jointly represented by court-appointed counsel.
Heather testified at the hearing that on May 11, 2004, Chad hit her on the buttocks six times with his belt because she had let the dog out. She felt pain after he hit her, and the pain did not stop until the following weekend. Heather testified that C.J. had observed the incident and that she had observed Chad hitting C.J. with a belt several times in the recent past. She recalled witnessing an incident in February in which C.J. had broken a blade off a fan and Chad had hit C.J. with the blade, causing C.J. to have bruises on his upper thighs and back. Heather testified that Michelle saw Chad hitting C.J. and did nothing to stop it and that Michelle had been present at other times when Heather had been hit and had done nothing to stop it. Heather testified that Michelle had also hit both her and C.J. with a belt on more than one occasion. Heather testified regarding other incidents in which Chad had been angry with her and had pulled her hair and hit her on the head. Heather also described a common punishment used by Chad known as "riding the Harley" in which she or C.J. would be required to remain in a squatting position with their arms raised forward for an extended period of time. She testified that once they had been required to hold the position for 3 hours. Heather stated that she had witnessed Chad hitting Andrea with a belt in the past when Andrea was "[a]bout five."
Heidbrink testified at the hearing regarding his investigation in which he was assisted by a Department of Health and Human Services caseworker. Heidbrink and the caseworker interviewed Heather and elicited the same information Heather had reported to her counselor. Heidbrink observed bruises on Heather's buttocks that she said were caused by her being hit by Chad on May 11, 2004. Photographs in evidence show the bruises.
Heidbrink interviewed Chad and Michelle individually on May 14, 2004. Both admitted to having hit the children with a belt. Chad admitted to having hit C.J. with a fan blade, and he admitted to hitting Heather on May 11 but said that he had not intended to bruise her. Michelle stated that she had not witnessed the incident on May 11 and that she may have been sleeping upstairs at the time.
Dr. Wilwerding testified regarding her examination of Heather's injuries on May 14, 2004. Dr. Wilwerding observed multiple bruises on Heather's buttocks, and Heather told her the bruises were caused when her stepfather hit her six times with a belt. Heather told her she was hit about once a month. Dr. Wilwerding testified that her examination indicated that the bruising had occurred on approximately *663 May 11; that the injuries were consistent with having been struck by a belt; and that in her medical opinion, the cause of the injuries was "[p]hysical beating." She also testified that a significant impact and a large amount of force were required for bruising to occur on the buttocks.
Chad and Michelle called witnesses on their behalf. A former babysitter for the children testified that she had known the family since 2000 and that she had not observed Chad and Michelle being angry with or yelling at the children, nor had she observed the children being fearful of them. Chad's father testified that he had not observed Chad or Michelle being violent toward their children and that he had observed them using only verbal discipline with the children.
Although Chad did not testify at the hearing, Michelle testified on her own behalf. She did not deny that she and Chad had hit the children on the buttocks, but she testified that they were never hit elsewhere on their bodies. Michelle testified that there had been an ongoing problem with Heather's letting the dog out and forgetting that the dog was still out. Michelle recounted other discipline problems they had had with Heather. Michelle testified that she and Chad first dealt with discipline problems by talking to the children and that they used other forms of discipline, such as grounding the children, before they would resort to physical discipline. Michelle testified that she had never disagreed with Chad's physical discipline but that she was not aware that the children had ever sustained bruises as a result. Michelle admitted that she had observed Chad hit C.J. with a fan blade, but she said the discipline was not "hard" and was only on the buttocks. Michelle disputed some of Heather's testimony regarding other incidents in which Heather had been physically disciplined.
Following the hearing, the court on June 22, 2004, found that the State had proved its allegations by a preponderance of the evidence, and the court therefore entered an order adjudicating the children to be within the meaning of § 43-247(3)(a). The court took jurisdiction over the children and ordered that out-of-home placement be continued, that a case plan and court report be prepared, and that a disposition hearing be scheduled. Chad and Michelle appeal the June 22 order of adjudication.

ASSIGNMENTS OF ERROR
Chad and Michelle assert that (1) they received ineffective assistance of counsel or that their due process rights were violated because counsel failed to retain a pediatrician to give a second medical opinion, (2) their due process rights were violated because their court-appointed counsel had a conflict of interest as a result of representing them jointly, and (3) the evidence was insufficient to support the court's decision.

STANDARD OF REVIEW
Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. In re Interest of Brian B. et al., 268 Neb. 870, 689 N.W.2d 184 (2004).

ANALYSIS

No Ineffective Assistance of Counsel Claim in This Juvenile Adjudication Where Counsel Was Appointed Pursuant to Statute and Appointment Not Required Under Federal Constitution.
Chad and Michelle argue that because counsel failed to obtain and present *664 testimony consisting of a second medical opinion regarding Heather's injuries, they were provided ineffective assistance of counsel, or, in the alternative, their due process rights were violated. Following our review of the record, we conclude that ineffective assistance of counsel is not an available claim in this juvenile adjudication proceeding in which counsel was appointed pursuant to statute and where counsel was not required under the federal Constitution.
We recently stated in a case involving termination of parental rights, that "juvenile proceedings are civil rather than criminal in nature" and that "an individual has no constitutional right to effective assistance of counsel in a civil proceeding." In re Interest of Joshua R. et al., 265 Neb. 374, 381, 657 N.W.2d 209, 214 (2003). See, also, In re Interest of Azia B., 10 Neb.App. 124, 626 N.W.2d 602 (2001). In In re Interest of Joshua R. et al., our rationale stemmed from the fact that the right to counsel and the corresponding right to effective counsel derived from the Sixth Amendment are limited to "criminal prosecutions." We further observed that "a statutory right to the appointment of counsel does not give rise to an ineffective assistance of counsel claim in a civil postconviction case," 265 Neb. at 382, 657 N.W.2d at 215, and we reasoned that a similar result was indicated in juvenile proceedings. Our rationale for this reasoning was the fact that appointment of counsel in a civil case where such appointment is not required by the federal Constitution need not be accompanied by a corresponding entitlement to effective counsel. See Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (stating that because there is no constitutional right to counsel in postconviction proceedings, there is no claim of ineffective assistance of counsel). Although the instant case involves an adjudication, we note that the U.S. Supreme Court has held that while the federal Constitution does not require that counsel be appointed for parents in every parental rights termination proceeding, due process might require appointment of counsel in certain parental rights termination proceedings. Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In Lassiter, the Court held that the determination of whether due process requires appointed counsel should be made in the first instance by the trial court, subject to appellate review, and that such determination should be based on a balancing of the parent's interests, the state's interests, and the risk that a parent will be erroneously deprived of his or her child because the parent is not represented by counsel. We have previously applied Lassiter and concluded that due process did not require that a parent be represented by counsel at a temporary detention hearing. In re Interest of R.R., 239 Neb. 250, 475 N.W.2d 518 (1991).
Leaving aside the fact that this juvenile case involves an adjudication rather than a parental rights termination, as in Lassiter, we note that in this case, counsel was appointed for Chad and Michelle based on statute and not on the basis of constitutional imperative, and we do not believe that appointment of counsel was required under the federal Constitution. See, Neb.Rev.Stat. § 43-279.01(1)(b) (Reissue 2004); In re Interest of N.M. and J.M., 240 Neb. 690, 697, 484 N.W.2d 77, 82 (1992). We therefore analyze Chad and Michelle's claims regarding performance of counsel under principles applicable to the statutory right to counsel rather than under a federal constitutional right to counsel. See In re Welfare of G.L.H., 614 N.W.2d 718 (Minn.2000) (noting distinction between constitutional right to counsel and statutory *665 right to counsel in juvenile proceedings).
Although we did not find entitlement to an ineffective assistance of counsel claim in In re Interest of Joshua R. et al., 265 Neb. 374, 657 N.W.2d 209 (2003), we nevertheless noted that due process is required in cases involving termination of parental rights. Id. We have also acknowledged that parents are entitled to due process in adjudication proceedings. In re Interest of Mainor T. & Estela T., 267 Neb. 232, 674 N.W.2d 442 (2004). In that case, we stated that in the context of both adjudication and termination hearings,
"`[p]rocedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.'"
267 Neb. at 247-48, 674 N.W.2d at 457 (quoting In re Interest of Ty M. & Devon M., 265 Neb. 150, 158, 655 N.W.2d 672, 681 (2003)). The fundamental fairness concept of the Due Process Clause of the 14th Amendment informs our assessment of the protections which are appropriate in juvenile matters. See In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
As is evident from the claims on appeal in this case, as a practical matter, due process claims challenging the adequacy of representation by counsel in juvenile cases commonly encompass assertions that in a criminal case might be characterized as "ineffective assistance of counsel" claims. Although the record does not require appointment of counsel on federal constitutional grounds, Chad and Michelle were entitled to due process, and we therefore review the following assignments of error in light of due process requirements.

Absence of Second Medical Opinion Did Not Violate Due Process.
Because the due process to which a party is entitled is derived from the context in which the claim arises, we note that the present case involves adjudication rather than termination proceedings. We have noted, "The purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase." In re Interest of Brian B. et al., 268 Neb. 870, 878, 689 N.W.2d 184, 191 (2004). We therefore review the due process afforded to Chad and Michelle in light of the understanding that the purpose of these adjudication proceedings was to protect the interests of the children rather than to ultimately determine Chad and Michelle's parental rights.
Following our review of the adjudication proceedings herein, we conclude that Chad and Michelle were not denied due process. They were given proper notice and a hearing and were represented by counsel. With respect to their specific argument regarding a second medical opinion, we determine from our review of the proceedings that Chad and Michelle were given a reasonable opportunity to refute and defend against the medical testimony and to confront and cross-examine Dr. Wilwerding, the State's witness, and that in fact, they did present evidence with respect to the issues in the case. Furthermore, we note that there is nothing in the record before us that would suggest that a second medical opinion could be obtained that would likely refute the testimony of Dr. Wilwerding, engender doubt in the accuracy of the photographs depicting Heather's *666 injuries, or otherwise affect the outcome of these proceedings. We therefore reject Chad and Michelle's claim that their due process rights were violated because of counsel's purported failure to obtain and present a second opinion.

Joint Representation Did Not Violate Due Process.
Chad and Michelle further assert that their due process rights were violated because they were represented by the same court-appointed counsel and that such counsel had a conflict of interest arising from such joint representation. We conclude that the joint representation in these proceedings did not violate the due process rights of either Chad or Michelle.
We note that in the context of criminal cases, we have stated that a party asserting a conflict of interest based on joint representation of codefendants "must demonstrate that his or her lawyer actively represented conflicting interests and that the actual conflict of interest adversely affected the lawyer's performance." State v. Marchese, 245 Neb. 975, 978, 515 N.W.2d 670, 673 (1994). We use this standard as guidance in our determination of whether counsel's joint representation in this case violated either Chad's or Michelle's due process rights.
Chad and Michelle focus their arguments on the purported detriment the joint representation had on Michelle's interests. They assert that Michelle was not as culpable as Chad under the allegations of the petition because she did not participate in and was not aware of the incident on May 11, 2004. They argue that separate representation would have better served Michelle's interests by highlighting how her behavior differed from that of Chad and that joint representation forced counsel to focus on Chad's interests and lose sight of Michelle's "defense."
We note, however, that the allegations in the petition encompassed more than the May 11, 2004, incident and were not limited to Chad's behavior. In addition to the allegations made against Chad individually, the State alleged that "[b]oth parents admitted to using a belt as a form of punishment on their children." The State also alleged that "Heather told Dr. Wilwerding that her Mom is aware of the way her stepfather is disciplining her and her siblings. She stated that she would not go talk to her Mom about it because she would just go tell Dad and he will get even more mad." The allegations in the petition implicated the behavior of both Chad and Michelle, and their behavior allegedly bore similarities.
Our review of these adjudication proceedings shows that Michelle's individual interests were adequately represented by counsel. Counsel called Michelle to testify in her own behalf and asked questions which allowed Michelle to present her perspective on the issues in this case. Michelle testified that she was not present and was not aware of the May 11 incident until after Heather reported it. Michelle also disputed aspects of Heather's testimony and detailed her version of how discipline was handled within the family. Michelle admitted that she hit the children with a belt and did not intervene when Chad did so. Because Michelle was able and did present her version of events at the hearing, we reject the argument that counsel focused on Chad to Michelle's detriment.
Chad and Michelle have not demonstrated that an actual conflict of interest existed or that any such conflict adversely affected their joint counsel's performance on behalf of either parent. Joint representation did not deprive either party of a reasonable opportunity to refute and defend against the charges and accusations, to *667 confront and cross-examine adverse witnesses, or to present evidence on the charges and accusations. We therefore conclude that joint representation did not violate Chad and Michelle's due process rights.

Order of Adjudication Was Supported by Sufficient Evidence.
Finally, Chad and Michelle assert that the evidence was not sufficient to support the court's adjudication order. We conclude that there was sufficient evidence to support the court's order of adjudication.
In its petition, the State alleged in general that Heather, C.J., and Andrea are children
who lack proper parental care by reason of the fault or habits of their parent(s), guardian(s), or custodian(s); whose parent(s), guardian(s), or custodian(s) neglect or refuse to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juveniles; or who are in a situation or engage in an occupation dangerous to life or limb or injurious to the health or morals of such juveniles.
Each of these general allegations is one of the factors described in § 43-247(3)(a).
The petition was very detailed in its allegations. The State made specific allegations regarding the May 11, 2004, incident wherein Chad hit Heather with the belt, the incident in which Chad hit C.J. with the fan blade, both Chad's and Michelle's past use of a belt to punish the children, and Michelle's awareness of and failure to stop Chad's use of physical discipline.
At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. In re Interest of Jac'Quez N., 266 Neb. 782, 669 N.W.2d 429 (2003); In re Interest of T.M.B. et al., 241 Neb. 828, 491 N.W.2d 58 (1992). See § 43-279.01(3). At the adjudication hearing, the State presented evidence to support the allegations in the petition. As we discussed above in the "Statement of Facts," the State presented testimony by Heather, Heidbrink, and Dr. Wilwerding, and photographs showing Heather's injuries were admitted in evidence. Chad and Michelle presented opposing testimony.
Although Michelle disputed some of Heather's testimony regarding certain incidents, the county court apparently accepted Heather's testimony, and we give weight to the fact that the court observed the witnesses and accepted Heather's version of the facts over Michelle's version. When the evidence is in conflict in a juvenile case, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. In re Interest of Jac'Quez N., supra; In re Interest of Joshua R. et al., 265 Neb. 374, 657 N.W.2d 209 (2003).
Having reviewed the evidence presented at the hearing, we conclude that the State provided sufficient evidence to prove the allegations of the petition by a preponderance of the evidence. We therefore reject Chad and Michelle's final assignment of error.

CONCLUSION
In this case, appointment of counsel was not required on federal constitutional grounds and no ineffective assistance of counsel claim is available with respect to these juvenile adjudication proceedings in which counsel was appointed pursuant to statute. However, Chad and Michelle were entitled to due process in these juvenile adjudication proceedings. We conclude *668 that Chad and Michelle were accorded fundamental fairness and that their due process rights were not violated in these proceedings. We further conclude that there was sufficient evidence to support the adjudication of all three children. We therefore affirm the adjudication order of the county court.
AFFIRMED.