NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

EMILY B, ANDREW D., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.B., N.D., *Appellees*.

No. 1 CA-JV 19-0150
FILED 6-2-2020

Appeal from the Superior Court in Navajo County
No. S0900JD201800026
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

The Brewer Law Office, Show Low
By Benjamin M. Brewer
*Counsel for Appellant, Mother*

The Lara Group PLC, Mesa
By Matthew Lara
*Counsel for Appellant, Father*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Paul J. McMurdie joined.

---

**C A M P B E L L,** Judge:

¶1        Emily B. ("Mother") and Andrew D. ("Father") (collectively "Parents") appeal the juvenile court's order terminating their parental rights to their children, Abbigail and Nicklous (the "Children"), on the grounds of neglect and prolonged substance abuse. Because reasonable evidence supports the court's order, we affirm.

## BACKGROUND

¶2        Parents have a long history with the Department of Child Safety ("DCS"). This is their fourth out-of-home dependency proceeding arising out of parental substance abuse. The services DCS provided Parents in prior dependencies included substance abuse counseling and drug testing, parenting skills classes, and supervised visitation. In each previous case, the court ultimately returned the Children to Parents.

¶3        Parents have a history of criminal behavior and domestic violence directly linked to alcohol abuse. As relevant here, during 2018, police reports documented six "alcohol and violence-related" events.

¶4        DCS became involved again with the Parents in August 2018 after receiving a report from the child abuse hotline concerning Abbigail.[1] The girl had returned from school to find her Parents intoxicated. Feeling "overwhelmed," she went out to the patio, began screaming, and eventually called her aunt to come and help. Trying to avoid a scene outside, Parents grabbed Abbigail by her arms and dragged her into the house. Once inside, she tried to leave her bedroom, but Father pulled her arm again to keep her from leaving. The daughter sustained a "crush" injury, bruising, and a strained muscle in her arm. Show Low Police Department responded, but neither Parent was arrested.

---

[1]    Father is Abbigail's stepfather, but he testified he treats her as his own child.

¶5        DCS scheduled a Team Decision Making meeting for ten days after the incident. The morning the meeting was to be held, Father called to reschedule and was told DCS would seek temporary custody of the Children.

¶6        At the time the meeting was to be held, the case manager and a police officer arrived at Parents' home to serve a court authorized removal and a temporary custody notice. According to a DCS report and testimony, the case manager found Father "passed out on the floor" with "his leg hanging out of the patio door," and Mother "passed out on the couch." DCS took the Children into custody. Later that day, Mother was arrested for disorderly conduct and "threatening-intimidating," and Father was voluntarily committed to in-patient psychiatric care for suicidal ideation. The Children were eventually placed with their aunt and uncle.

¶7        DCS filed a dependency petition August 2018, and the court found the Children dependent in January 2019 as to both Parents.

¶8        Throughout the dependency, Parents continued to drink alcohol excessively. For example, on a day Parents cancelled a scheduled visit with the Children, the police conducted a welfare check and found Mother in the car with empty and full shooter bottles of alcohol. Mother drank another shooter in front of the deputy, and both Parents later admitted to drinking that day. According to a report by the guardian ad litem, on this occasion, Parents had "chosen to spend the day drinking rather than having their [C]hildren for a visit." Both Parents then entered rehabilitation facilities.

¶9        In September 2018, DCS moved to terminate both Parents' parental rights on the statutory grounds of neglect, willful child abuse, and chronic substance abuse pursuant to A.R.S. § 8-533(B)(2), (3). At the outset of the two-day severance hearing, Mother objected to DCS's proffered exhibits, but the court overruled the objection because Mother had not filed a written objection to the exhibits before trial. DCS also filed a motion to waive a social study, which the court denied. Following the hearing, the court terminated Parents' rights to both Children pursuant to A.R.S. § 8-533(B)(2), (3).

¶10        In a detailed ruling, the court took judicial notice of the Parents' previous dependency cases and sua sponte waived the social study. The court found that Parents neglected the Children and were unable to discharge their parental responsibilities due to prolonged substance abuse that was likely to continue. The court also found that

termination was in the best interests of the Children because they were thriving in their aunt and uncle's care, could maintain relationships with other family members through this familial placement, and would benefit from stability because their aunt and uncle intended to adopt them. Parents timely appealed.

## DISCUSSION

### I.    Termination Ground of Neglect Regarding Father

¶11    Father only challenges the juvenile court's termination based on neglect, arguing the court gave undue weight to the "biased testimony" of Mother's relatives and that the findings were "confusing" because the court used Abbigail's "injury as evidence that the Parents' neglect caused unreasonable risk of harm to child's health or welfare" while also finding that the "state did not meet its burden of proof that the child was abused or that there was serious physical or emotional injury."

¶12    Neither Parent's contest the juvenile court's termination of their parental rights based on prolonged substance abuse.  This court can affirm the termination of parental rights on any single statutory ground, and upon doing so, does not need to address other grounds on which the juvenile court ruled. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000). In light of the evidence in support of the juvenile court's finding regarding the ground of prolonged substance abuse, which Father does not dispute on appeal, we decline to address Father's argument regarding the court's neglect finding.

### II.    Judicial Notice

¶13    Both Parents argue the juvenile court abused its discretion and denied them due process by taking judicial notice of their prior dependency cases. Each contends that because the juvenile court did not announce during the hearing that it would take judicial notice, the court erred by depriving them of notice and an opportunity to be heard.

¶14    "A court may take judicial notice of the record in another action tried in the same court." *Reidy v. O'Malley Lumber Co.*, 92 Ariz. 130, 132, (1962); *see* Ariz. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Further, "[t]he court may take judicial notice at any stage of the proceeding." Ariz. R. Evid. 201(d). Rule 201(e) states that upon a "*timely request*, a party is entitled to be heard on the propriety of taking judicial

4

notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, *on request*, is still entitled to be heard." Ariz. R. Evid. 201(e) (emphasis added).

¶15 At the termination hearing, multiple witnesses testified about the prior dependencies, and neither Parent objected to that testimony. Having failed to object to testimony about the prior dependencies, Parents then failed to exercise their right under Rule 201(d) to be heard after the court took judicial notice of the dependencies in its termination order without informing the parties ahead of time that it would do so. Instead, Parents simply filed their respective notices of appeal. "We do not consider arguments raised for the first time on appeal except under exceptional circumstances." *In re MH 2008-002659*, 224 Ariz. 25, 27, ¶ 9 (App. 2010). Because Parents did not object in the juvenile court after the court took judicial notice, we will not address their argument on appeal.

### III. Reasonable Efforts to Provide Reunification Services

¶16 Parents argue the juvenile court abused its discretion by finding that DCS was not required to provide Parents with additional reunification services. Mother specifically argues that the court "did not rule on the issue of futility if additional services were offered."

¶17 DCS is not required to provide every conceivable service or "undertake rehabilitative measures that are futile." *Mary Ellen C. v. ADES*, 193 Ariz. 185, 192 (App. 1999). Here, the court implicitly found that "grounds for not providing reunification services existed," expressly agreeing with DCS's contention that additional services "were [not] likely to result in long term modifications in behavior to the extent that the [C]hildren could be safely returned to the [Parents]." Based on the evidence of the Parents' historical repeated failures to make behavioral changes in three prior dependencies, the juvenile court acted within its discretion by deciding additional services would be futile.

¶18 Moreover, contrary to Mother's contention, at the onset of this fourth dependency, the court did in fact order additional services for her. As the court explained in its termination order, because "Mother was pregnant, . . . the court felt that services were needed to allow the best chance for a healthy birth." Services DCS provided to Mother included individual counseling, parent aide services, facilitated visitation, and substance abuse assessment and treatment. Despite receiving these additional services, however, Mother continued to abuse alcohol.

¶19        In light of the circumstances, there is sufficient evidence in the record to justify the court's finding that DCS made reasonable efforts to reunify the family.

## IV.    Waiver of Social Study

¶20        Father argues the juvenile court abused its discretion and denied him due process by sua sponte waiving the social study after previously denying DCS's waiver motion. He contends he was not allowed to object to the waiver or make a record regarding the necessity of a social study.

¶21        "On the filing of a petition, the court shall order DCS to . . . conduc[t] a . . . social study . . . ." A.R.S. § 8-536(A). "The social study shall include the circumstances of the petition, the social history, the present condition of the child and parent, proposed plans for the child and other facts pertinent to the parent-child relationship." *Id.* However, the court may waive the requirement of the social study based on the best interests of the child. A.R.S. § 8-536(C); *Matter of Appeal in Pima Cty. Juvenile Severance Action No. S-2710*, 164 Ariz. 21, 24 (App. 1990) (finding the juvenile court did not err in waiving the social study when evidence was presented on the "crucial issues" that a social study would likely address), *disapproved on other grounds by Matter of Appeal in Maricopa Cty. Juvenile Action No. JS-500274*, 167 Ariz. 1 (1990).

¶22        Here, the court received evidence on the "crucial issues" that the social study would have covered, including circumstances giving rise to the petition to terminate parental rights, the Parents' history of alcohol abuse and its effect on the Children, the present condition of the Children and the plan for the Children to be adopted by their aunt. Accordingly, the court did not abuse its discretion by waiving the social study.

## V.    Mother's "Appreciable Efforts"

¶23        Relying on *Donald W., Sr. v. Arizona Department of Economic Security*, 215 Ariz. 199, 205, ¶ 16 (App. 2007), *as amended* (Oct. 19, 2007), *opinion vacated in part* (Oct. 19, 2007),[2] Mother contends that the juvenile court abused its discretion in terminating her parental rights in light of her

---

[2]    We note that *Donald W.* is a memorandum decision and is not regarded as precedent. *See John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 323, ¶ 8 (App. 2007) (declining to consider *Donald W.* because the Arizona Supreme Court vacated it in part and designated the remaining portions as a memorandum decision).

"appreciable efforts" to comply with her rehabilitative services. She argues, "[s]everance is not appropriate when a parent has made 'appreciable,' efforts to comply with remedial programs outlined by [DCS]."

¶24        Mother confuses the elements of the various statutory grounds for termination. In *Donald W.*, the issue before the court was the termination of parental rights based on time-in-care under A.R.S. § 8-533(B)(8)(a),  which requires a showing that "the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement." We stated in *Donald W.* that "appreciable, good faith efforts" by a parent to comply with services may logically preclude a finding under the nine-months' time in care ground. 215 Ariz. at 205, ¶ 16. Here, however, the juvenile court did not terminate Mother's rights pursuant to the nine-months' time in care ground, but instead found two other grounds for termination, neglect and substance abuse.

¶25        These grounds do not require the court to consider a parent's "appreciable efforts." *See* A.R.S. § 8-533(B)(2), (3). Accordingly, the juvenile court did not err by failing to make such findings.

## VI.    Ineffective Assistance of Counsel

¶26        Mother asserts her trial counsel was ineffective because he failed to timely object to 43 exhibits the juvenile court admitted at the hearing, and that, as a result, the severance proceedings were fundamentally unfair. Mother does not, however, present any legal argument for why the exhibits should not or could not have been admitted, had timely objections been raised. For that reason, we need not address the merits of her contention that her counsel was ineffective.

¶27        Nevertheless, we note that no Arizona court has reversed a termination order based on  ineffective assistance of counsel. *See John M.*, 217 Ariz. at 324, ¶ 12; *but see Matter of Appeal in Gila Cty. Juvenile Action No. J-3824*, 130 Ariz. 530, 533, 536 (1981) (reversing and remanding where the appellant was denied her right to a guardian ad litem and received ineffective assistance of counsel), *disapproved on other grounds by Matter of Appeal in Pima Cty. Juvenile Action No. S-919*, 132 Ariz. 377 (1982). In other words, contrary to the premise of Mother's argument, whether ineffective assistance of counsel can result in reversal of a severance in Arizona, remains an open question.

¶28        Many decades ago, our Supreme Court held that the juvenile court may not bar a parent from appearing with retained counsel in a

dependency proceeding. *Ariz. State Dep't of Public Welfare v. Barlow,* 80 Ariz. 249, 253 (1956). Given that the law affords a hearing to a parent in a dependency, the court held that the denial of a parent's request to be represented by retained counsel in that hearing would violate due process. *Id.* As for a parent's right to *appointed* counsel in a dependency, the United States Supreme Court has held that although the Due Process Clause of the United States Constitution does not require appointment of counsel for every indigent parent facing termination of his parental rights, "[w]ise public policy . . . may require that higher standards be adopted than those minimally tolerable under the Constitution." *Lassiter v. Dep't of Soc. Servs. of Durham County, N.C.,* 452 U.S. 18, 31–32, 33–34 (1981). Indeed, in 1970, the Arizona legislature enacted what is now A.R.S. § 8-221(B), which states, "[i]f a juvenile, parent or guardian is found to be indigent and entitled to counsel, the juvenile court shall appoint an attorney to represent the person or persons unless counsel for the juvenile is waived by both the juvenile and the parent or guardian." We have held this requires the appointment of counsel for indigent parents in termination proceedings.[3] *See Tammy M. v. Dep't of Child Safety*, 242 Ariz. 457, 461, ¶ 13 (App. 2017); *see also Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447, ¶ 36 (2018). The statute, however, does not specify that a parent's counsel must be effective, let alone articulate how effectiveness might be measured and assessed.

¶29        Consistent with *Barlow* and notwithstanding *Lassiter*, Arizona courts continue to hold that a parent's right to counsel in termination proceedings is of "constitutional dimension." *Daniel Y. v. Ariz. Dep't of Econ. Sec.,* 206 Ariz. 257, 260, ¶¶ 12, 14 (App. 2003); *see, e.g., Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 307, ¶ 28 (App. 2007) ("For termination adjudication hearings, indigent parents have a right to appointed counsel pursuant to [statute] and the Due Process Clause of the United States Constitution."); *Denise H. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 257, 259, ¶ 6 (App. 1998) (stating an indigent parent's right to counsel is afforded by statute and by the Due Process Clause.).

¶30        In the criminal context, a defendant's right to effective assistance of counsel is rooted in the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984) (the "purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding."). Relying on *Lassiter*, however, the Ninth Circuit recently declined to

---

[3]        The phrase "and entitled to counsel" in A.R.S. § 8-221(B) was added in 1997 and, upon our review of Arizona caselaw, no court since has been asked to determine the significance of the amendment.

recognize a parent's right to counsel in termination proceedings as being rooted in the Sixth Amendment, because, "[b]y its terms, the Sixth Amendment applies only to 'criminal prosecutions.'" *O'Neal v. Sherman*, 2014 WL 5810308, at 3 (9th Cir. 2014) (citing *Lassiter*, 452 U.S. at 23–32).

¶31 Instead, a parent's right to counsel in a termination proceeding in Arizona is dually rooted in statute and the Due Process Clause. The nature or quality of the legal representation to which a parent is entitled in Arizona, presently an open question, must be derived from one or both of those two bases.

¶32 The Due Process Clause of the United States Constitution imports a "requirement of fundamental fairness, a requirement whose meaning can be as opaque as its importance is lofty." *Lassiter*, 452 U.S. at 24 (internal quotation omitted). *Lassiter* suggests that "[a]pplying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests at stake." *Id*. at 24-25. No Arizona case has specified the bounds of due process in this particular situation. *John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 324, ¶ 12 (App. 2007); *but see Matter of Appeal in Gila Cty. Juvenile Action No. J-3824*, 130 Ariz. 530, 536 (1981) (reversing and remanding where appellant was denied her right to a guardian ad litem and received ineffectual assistance of counsel). Instead, some Arizona courts have assumed, without deciding, that Arizona recognizes ineffective assistance of counsel as an independent ground for relief on appeal of a termination order and then have addressed the issue as if it arose in the context of the Sixth Amendment right to effective assistance of counsel. *Id*. at 325, ¶ 17; *cf. Matter of Appeal in Santa Cruz County Juv. Dep. Action Nos. JD–89–006 and JD–89–007,* 167 Ariz. 98, 101 (App. 1990) (assuming without deciding that ineffective assistance of counsel "is properly raised in the context of a dependency proceeding").

¶33 In *Lassiter*, however, the Supreme Court distinguished between the civil termination context and the criminal context: "The pre-eminent generalization that emerges from [the Supreme Court] precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." 452 U.S. at 25. The court explained, "[t]he Court has refused to extend the right to appointed counsel to include prosecutions which, though criminal, do not result in the defendant's loss of personal liberty." *Id*. at 26.

¶34            Other jurisdictions vary in their approach to ineffective assistance of counsel claims in termination proceedings. *John M.*, 217 Ariz. at 324, ¶ 13.

> *Compare, e.g., S.B. v. Dep't of Children & Families,* 851 So.2d 689 (Fla. 2003) (ineffective assistance claim recognized in appeal of termination order, where right to counsel grounded in state constitution, but not dependency order, where right to counsel only statutory); *In re Heather R.*, 269 Neb. 653, 694 N.W.2d 659, 664–65 (2005) (no ineffective assistance of counsel claim in civil juvenile proceeding; allegation of inadequate representation assessed as a due process claim to fundamentally fair procedure); *In re N.D.O.,* 121 Nev. 379, 115 P.3d 223, 224–25 (2005) ("no ineffective-assistance-of-counsel Claim will lie" where counsel not constitutionally required under *Lassiter; Strickland* standard), *with In re M.S.,* 115 S.W.3d 534, 544–45 (Tex. 2003) (statutory right to counsel includes right to effective counsel; *Strickland* standard); *In re Geist,* 310 Or. 176, 796 P.2d 1193, 1200–01 (1990) (statutory right to counsel "may prove illusory" without remedy for ineffective assistance; "fundamental fairness" standard).

¶35            And other states have adopted statutes that authorize ineffective assistance of counsel claims and establish a procedure for review in the trial court requiring a hearing on the issue. *See, e.g.,* NJ RAR. 2:10-6.

¶36            "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)); *see also Michael J.* 196 at Ariz. 246, 248 (2000). However, termination proceedings do not jeopardize the physical liberty of any party. The best interests of a child is the ultimate and most pervasive concern in dependency proceedings. How will the child's best interests be affected if the courts determine that the right to counsel for Arizona termination proceedings necessarily includes the right to effective counsel? If there is such a right, from where is that right derived; and, if there is not, why are we using judicial resources to address the issue each time it is raised? If there is no legal foundation for such claims, should we not be dismissing them out of hand? Is it logical to apply the *Strickland* test, a criminal standard, in the civil termination context, given that the right to counsel is derived from completely different sources—respectively, the Sixth Amendment to the Federal Constitution versus an Arizona legislative enactment of Constitutional dimension?

¶37 These questions will remain unless or until the legislature enacts legislation or the Arizona Supreme Court rules on the issue.

## CONCLUSION

¶38 For the foregoing reasons, we affirm.

